Argued and submitted April 7, peremptory writ issued May 12, 1987

## STATE ex rel UPHAM
*Plaintiff-Relator,*

*v.*

## BONEBRAKE,
*Defendant.*

(SC S33469)

736 P2d 1020

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for Plaintiff-Relator. On the brief was Dave Frohnmayer, Attorney General, Virginia Linder, Solicitor General, and Terry Ann Leggert, Assistant Attorney General, Salem.

James K. Gardner, Hillsboro, argued the cause and filed the briefs for defendant.

Before Peterson, Chief Justice, and Lent, Linde, Carson, Jones and Gillette, Justices.

GILLETTE, J.

### GILLETTE, J.

This mandamus proceeding arose out of a criminal prosecution for rape and sexual abuse. Defense counsel in the criminal case moved prior to trial for an order requiring the state to produce the complaining witness for a pretrial interview. The witness, a minor, was not in the custody of any state agency. The trial judge (defendant in this proceeding) held a hearing on the motion, during which the deputy district attorney assigned to the case informed the judge that the witness did not wish to speak to the defense counsel.[1] The deputy district attorney further argued that his office lacked the authority to compel the witness to appear for an interview. The trial judge allowed the defense counsel's motion and entered the following order:

> "The Court having heard the arguments of counsel, and being fully advised, hereby ORDERS the Washington County District Attorney's Office to produce the child victim in this case * * * and to make her available for a face to face meeting with defendant's counsel for the requested pretrial interview by defense counsel."

Relator, the Washington County District Attorney, brought this mandamus proceeding, alleging that the defendant trial judge lacked the authority to enter the order. We agree.

It is undisputed that the trial judge could not directly have ordered the witness to appear for an interview. In *State ex rel Roach v. Roth,* 293 Or 636, 639, 652 P2d 779 (1982), the trial judge in a criminal case ordered the Children's Services Division (CSD) to produce a child witness in its custody for a pretrial interview with the defense counsel. This court there held that the circuit court had no general power, merely by virtue of conducting a trial, to order conduct outside the courtroom of persons who were not parties to the trial. This court later held, on identical facts, that ORS 1.010(5)[2] did not pro-

---

[1] Neither the defense counsel nor the defendant trial judge here contends that the witness could be compelled to talk to defense counsel during a pretrial interview.

[2] ORS 1.010(5) provides:

"Every court of justice has power:

"* * * * *

"(5) To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto."

vide the circuit court with that authority. *State ex rel Roach v. Olsen,* 295 Or 107, 663 P2d 767 (1983); *see also State v. Hiatt,* 303 Or 60, 733 P2d 1373 (1987)(trial court has no authority to order complaining witness to submit to psychological examination). It is clear from the foregoing cases that the trial judge in this case lacked the authority directly to order the mother, a non-party, to produce the child for a pretrial interview.

The trial judge, relying on the following *dicta* from *Roth* and *Olsen,* argues that a trial court has the authority to order the prosecutor to produce the witness:

> "* * * The prosecutor represents a party, in fact the initiating party, to the criminal case and therefore to any procedures on the defense motion for access to a witness. An agency charged with custody of the witness normally is not a party, unless made so in a separate proceeding, and can resist an order addressed to it only by attempting to enter the criminal proceeding to have the order set aside or by inviting contempt proceedings. When an order is simply addressed to the state as a party, represented by the prosecutor, it leaves to the state the relationships and arrangements among the various agencies or officials that may be involved in complying with the order." *State ex rel Roach v. Roth, supra,* 293 Or at 641 (footnote omitted).

> "The opinion in *State ex rel Roach v. Roth, supra,* implied that an order to give the defense access to a witness might be addressed to the prosecutor as the representative of the party which initiated the proceeding and faces the consequences of noncompliance." *State ex rel Roach v. Olsen, supra,* 295 Or at 110.

Defendant judge reads these statements in *Roth* and *Olsen* too broadly. In both cases, the child witnesses sought to be interviewed were in the custody of the Children's Services Division, a state agency. In each case, we suggested that the state, acting through CSD, may have to cooperate with its prosecutor if the state intends to press a prosecution. We need not decide here whether that is true. *Cf. State v. Hiatt, supra,* 303 Or at 68 (leaving open the issue whether the district attorney must provide CSD files to the defendant as part of pretrial discovery). Here, there is no custodial relationship that arguably could give the district attorney the authority to compel the mother to produce the child for a pretrial interview.

In addition, no statute empowers the district attorney

to order a witness to appear for a pretrial interview. The district attorney's subpena power is set out in ORS 136.563 and ORS 136.565. ORS 136.563 provides:

> "The district attorney may issue subpenas subscribed by the district attorney for witnesses within the state in support of the prosecution or for such other witnesses as the grand jury directs to appear before the grand jury upon an investigation pending before it."

ORS 136.565 provides:

> "The district attorney may issue subpenas subscribed by the district attorney for not to exceed 10 witnesses within the state in support of an indictment to appear before the court at which it is to be tried."

The district attorney's subpena power is limited to compelling a witness's attendance before a grand jury or at trial. No statute authorizes the district attorney to compel the attendance of a witness for a pretrial interview with the defense counsel.

Defendant trial judge argues that Article I, section 11, of the Oregon Constitution and the Due Process Clause of the United States Constitution guarantee a criminal defendant the right to interview the prosecution's witnesses before trial.[3] A contrary holding, he argues, would offend Article I, section 20, of the Oregon Constitution[4] because, unlike criminal defendants, civil defendants have the right to depose witnesses before trial. *See generally* ORCP 36 to 40.

The compulsory process clause of the Oregon Constitution was designed to overturn the common law rule that a person charged with a felony was not entitled to compulsory process for his witnesses. *State ex rel Gladden v. Lonergan,* 201

---

[3] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor * * *."

The Fourteenth Amendment to the United States Constitution provides, in part:

"No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

[4] Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Or 163, 188, 269 P2d 491 (1954). Our cases interpreting that provision imply that the compulsory process clause guarantees the right to call witnesses and obtain their testimony *at trial. See State v. Mai,* 294 Or 269, 272-73, 656 P2d 315 (1982); *State ex rel Gladden v. Lonergan, supra,* 201 Or at 188. Exercise of the right to compulsory process may require that the state not impede defense counsel's access to prosecution witnesses for the purpose of pretrial interviews.[5] It does not, however, require that the district attorney affirmatively assist the defense by ordering the witness to be present for a pretrial interview, nor does it vest in the district attorney the power to do so.

■    Defendant also argues that the Due Process Clause of the United States Constitution grants a criminal defendant the right to interview the prosecution's witnesses before trial. Several federal courts have recognized a right to interview based on a criminal defendant's due process right to prepare a defense. *See, e.g., Kines v. Butterworth,* 669 F2d 6, 9 (1st Cir 1981), *cert den* 456 US 980 (1982); *United States v. Scott,* 518 F2d 261, 268 (6th Cir 1975). These cases hold that the prosecution may not, without justification, interfere with a criminal defendant's access to potential witnesses. However, the defendant must show more than a witness's unavailability to establish a violation of due process. *Kines v. ·Butterworth, supra,* 669 F2d at 9; *United States v. Scott, supra,* 518 F2d at 261. We do not find the rule of those cases to differ significantly from that of *State v. York,* 291 Or 535, 632 P2d 1261 (1981), previously discussed at note 5. In this case, defense counsel did not allege any prosecutorial misconduct, but only that the witness was unavailable. Defendant's federal constitutional claim is not well taken.

■    Finally, our holding does not offend Article I, section 20, of the Oregon Constitution. That constitutional provision was intended to ensure "equal treatment for persons similarly situated." *State v. Freeland,* 295 Or 367, 372, 667 P2d 509 (1983). Civil litigants and criminal defendants are not similarly situated. The processes in which they participate serve

---

[5] In *State v. York,* 291 Or 535, 632 P2d 1261 (1981), we held that, under disciplinary rules and discovery statutes, a district attorney acted improperly in advising the complaining witness not to talk to defense counsel. We did not base the holding on constitutional grounds. *Id.* at 542-43.

very different objectives, and the state's role in each cannot be equated. The state initiates criminal prosecutions in order to punish for misconduct. Explicit constitutional guarantees assure defendants of certain procedural rights which the state cannot deny. *See* Or Const, Art I, §§ 11, 12. The legislature has further enumerated these rights by statute.[6]

Civil litigation involves private (or governmental) parties engaged in non-criminal disputes. The legislature's responsibility is to provide processes of adjudication that will best resolve disputes and, where necessary, accommodate the constitutional right to trial by jury. Or Const, Art I, § 17. The legislature has provided rules for the management of civil trials in the Oregon Rules of Civil Procedure.

Given the different purposes of civil litigation and criminal prosecution and the different obligations the state has toward the parties in each, defendant cannot successfully compare criminal defendants to civil litigants. For this reason, the claim that criminal defendants are constitutionally entitled to the discovery standards of the rules of civil procedure (and conversely a civil litigant's claim of entitlement to, say, proof beyond a reasonable doubt or court-appointed counsel) cannot succeed.

In summary, we hold that the defendant trial judge did not have the power to compel the district attorney to produce the witness for a pretrial interview. The trial judge erred in ordering the district attorney to perform an unauthorized act.

Peremptory writ to issue.

---

[6] For example, the prosecution must automatically disclose the names and addresses of all witnesses it intends to call at trial, all relevant statements made by those witnesses, all reports or statements made by experts and the results of any tests it intends to offer in evidence at trial. ORS 135.815(1) and (3). In addition, under the federal constitution, the prosecution must, upon request, disclose to the defendant any evidence that the prosecution knows to be exculpatory. *Brady v. Maryland,* 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963).